UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUAN MOLINA CRESPO | ) | CASE NO.  1:05-cv-2796 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| vs. | ) | |
| | ) | |
| UNITED STATES MERIT SYSTEMS | ) | MEMORANDUM OF OPINION |
| PROTECTION BOARD, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Before the Court are Plaintiff Juan Molina-Crespo's Motion for Summary Judgment ("Plaintiff's Motion") **(ECF No. 15)** and the Cross Motion for Summary Judgment filed by Defendant Merit Systems Protection Board ("MSPB") ("Defendant's Motion") **(ECF No. 18)**.  Similarly before the Court is Plaintiff Molina-Crespo's Petition for Review of Administrative Agency Determination and Order ("Plaintiff's Petition") **(ECF No. 1)**.  For the following reasons, Plaintiff's Motion is **DENIED**, Defendant's Motion is **GRANTED**, Plaintiff's Petition is **DENIED**, and the claim is dismissed with prejudice.

## I.  BACKGROUND

The undisputed facts are as follows.

Beginning in 1999, Plaintiff Juan Molina-Crespo was employed as the Director of the Lorain County Children and Families First Council ("LCCFFC"), a governmental agency

financed in part by the federal government via pass-through funding from the Ohio Department

of Jobs and Family Services and from the Ohio Department of Health.  (ECF No. 19:3.)  In this

capacity, Molina-Crespo was a "covered employee" under the federal Hatch Act ("the Act"),

5 U.S.C. § 1501 *et seq.*[1]  Molina-Crespo filed papers with the Lorain County Board of Elections

in December of 2003, declaring that he would be a candidate in the Democratic primary election

for the office of Lorain County Commissioner, to be held on March 2, 2004.  (ECF No. 15-2:2.)

On January 13, 2004, the Office of Special Counsel ("OSC"), pursuant to OSC's duty to

administer and enforce compliance with the Act, contacted Molina-Crespo by telephone and

advised him that his candidacy violated the Act.  (ECF No. 8, ALJ's Summary

Adjudication/Initial Decision:4.)  Specifically, OSC had determined that Molina-Crespo's

candidacy violated 5 U.S.C. § 1502(a)(3)[2] and its implementing regulations found at 5 C.F.R.

§ 151.121(c).  Section 1502(a)(3) prohibits covered employees from running for elective office.

Then, in a February 3, 2004 letter from OSC to Molina-Crespo, he was again

advised that his candidacy violated the Act.  (ECF No. 8, ALJ's Summary Adjudication/Initial

Decision:4-5.)  In the initial contact, OSC advised Molina-Crespo that to come into compliance

with the Act, he would have to either resign from his position or withdraw his candidacy.  (Id.)

The subsequent letter repeated this instruction, and requested that Molina-Crespo resign or

---

[1] 5 U.S.C. § 1501(4) defines a covered state or local officer or employee as "an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency[.]"

[2] All subsequent references to statutory sections refer to sections found within Chapter 5 of the United States Code, unless otherwise specifically noted.

withdraw by February 13, 2004.  (Id.)  Molina-Crespo thereafter sent a response letter to OSC

dated February 13, 2004, requesting a full hearing before the MSPB.  (Id.)

Molina-Crespo did not win the primary election on March 2, 2004, nor did he

resign his position as Director of LCCFFC during that time.  OSC filed a complaint against

Molina-Crespo on October 7, 2004, alleging that he violated § 1502(a)(3) of the Act by being a

candidate for elective office for the March 2, 2004 election.  The parties agreed there were no

material facts in dispute and that the matter was appropriate for disposition on the pleadings by

the Administrative Law Judge ("ALJ") considering the complaint.  Accordingly, the parties filed

cross-motions for summary judgment.  Molina-Crespo first raised his constitutional arguments in

his motion before the ALJ.

The ALJ, in his Initial Decision dated March 25, 2005, held that Molina-Crespo

violated the Act, and that his violation consequently warranted Molina-Crespo's removal as

Director of LCCFFC.  The ALJ also concluded that he did not have the power or authority to

rule on the constitutionality of the Act.  (ECF No. 15-2:3-4.)

Approximately one month later, on April 29, 2005, Molina-Crespo timely

petitioned the full MSPB to review the ALJ's Initial Decision.  The parties briefed the MSPB on

the merits of the case, as well as the question of whether the agency had the legal power and

authority to pass on the constitutionality of a federal statute the agency must enforce.  (Id.:4.)

The MSPB issued its final order denying the petition for review on November 4, 2005.  The

MSPB's order did not address the constitutional arguments.  The MSPB's final order also

directed LCCFFC to remove Molina-Crespo from his position within 30 days.  Molina-Crespo

subsequently resigned, effective December 2, 2005.

-3-

On December 5, 2005, having exhausted all available administrative remedies and with the MSPB's order constituting a final administrative agency decision[3], Molina-Crespo filed his Petition in the instant case, seeking federal district court review pursuant to § 1508.  (ECF No. 1.)  On April 20, 2006, MSPB filed its answer to Molina-Crespo's petition.  (ECF No. 9.) Molina-Crespo filed the Plaintiff's Motion and accompanying supporting memorandum on July 24, 2006.  (ECF No. 15.)  On October 20, 2006, MSPB timely filed a response to Molina-Crespo's Motion, as well as its own Motion and supporting memorandum.  (ECF Nos. 18, 19.) Molina-Crespo, on December 4, 2006, filed a reply to MSPB's opposition brief, and an opposition brief to MSPB's Motion.  (ECF No. 20.)  After reviewing these documents, the Court, on December 7, 2006, ordered MSPB to file a brief addressing certain equal protection arguments Molina-Crespo raised in his December 4, 2006 filing.  MSPB complied in a brief filed on January 12, 2007.  (ECF No. 21.)  The respective Motions and the Petition have been fully briefed and are now ripe for adjudication.

## II.  JURISDICTION

The Court has jurisdiction to consider Molina-Crespo's appeal of MSPB's conclusions pursuant to 5 U.S.C. § 1508.  Venue is proper pursuant to 5 U.S.C. § 1508 because Molina-Crespo lives within the Northern District of Ohio.

The Court has jurisdiction to consider Molina-Crespo's constitutional arguments pursuant to 28 U.S.C. § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391(e)(3).

---

[3]The Court will subsequently refer to MSPB rather than the ALJ.

-4-

### III.  ANALYSIS

The Court at the outset notes concerns articulated by the Sixth Circuit in

*Alexander v. Merit Systems Protection Board* ("MSPB"), 165 F.3d 474, 480-81 (6th Cir. 1999).

In *Alexander*, the Sixth Circuit cited Tenth Circuit precedent in the context of analyzing a district

court's review of a MSPB ruling.  *Alexander*, 165 F.3d at 480-81 (citing *Olenhouse v.*

*Commodity Credit Corp.*, 42 F.3d 1560, 1579-80 (10th Cir. 1994)).  The Sixth Circuit "suggested

that the use of summary judgment is inappropriate for judicial review of an administrative action

under the Administrative Procedures Act."  *Donaldson v. United States*, 109 Fed. Appx. 37,

39-40 (6th Cir. 2004) (citing *Alexander*, 165 F.3d at 480).  The primary concern with treating

agency decision reviews via summary judgment motions is "it invites improper consideration of

evidence outside the administrative record and reliance upon post hoc rationalizations for the

agency's action."  *Alexander*, at 480.  Instead, according to the *Olenhouse* court, the district

court functions as an appellate court for purposes of reviewing an administrative action, and such

reviews are appropriately processed as appeals wherein summary judgments motions are

inappropriate.  *Id.*

The Sixth Circuit has not formally adopted the *Olenhouse* rule, however.  *See Air*

*Brake Systems, Inc. v. Mineta*, 202 F. Supp. 2d 705, 709 (E.D. Mich. 2002) (stating the Sixth

Circuit has "suggested, without deciding," that summary judgment is inappropriate for reviewing

administrative actions); *King v. Norton*, 160 F. Supp. 2d 755, 760 (E.D. Mich. 2001) (same).

Instead, the Sixth Circuit has "nonetheless considered the merits of the case if the district court

applied the proper standard of review and did not consider evidence outside of the administrative

record."  *Donaldson*, 109 Fed. Appx. at 40 (citing *Alexander*, 165 F.3d at 480).

-5-

Accordingly, this opinion is divided into two parts.  Part 1 consists of the Court's appellate review of the MSPB's decision that Molina-Crespo violated the Act, and that his violation warranted removal from his job.  The facts underlying these two related decisions are undisputed and considered at length by the MSPB in its Initial Decision.

Part 2 contains this Court's review and analysis of Molina-Crespo's constitutional arguments.  Although the evidence supporting Molina-Crespo's claim that the Act is unconstitutional was presented to the MSPB, that evidence is arguably "new" evidence unconsidered during the administrative proceedings; the MSPB explicitly declined to address Molina-Crespo's constitutional arguments.  Therefore the Court functions as a trial court in Part 2 to appropriately review the parties' respective Motions.

**PART 1**

In Part 1, Molina-Crespo argues that the MSPB's rulings – that he violated the Act and that the proper consequence was his removal – are not supported by substantial evidence and are based on erroneous interpretation of law and regulation.[4]  He also argues that the Act is unconstitutional, and consequently the MSPB's decision applying the Act is not "in accordance with the law," with "the law" being the United States Constitution.

**A.  The Act and Applicable Legal Standards**

Section 1502(a)(3) of the Act prohibits a covered state or local employee from running as a candidate for elective office.  Under § 1505, the Board has final jurisdiction to determine whether the Hatch Act has been violated, and "whether the violation warrants the

---

[4] The analysis in Part 1 assumes, *arguendo*, that the Act is constitutional.  The question of whether the Act is constitutional is addressed in Part 2.

removal of the officer or employee from his office or employment[.]" § 1505(2). Further, "the Board's determination may be reversed only when the reviewing court determines that the Board abused its discretion, or that the decision was not in accordance with the law." *Alexander v. MSPB*, 165 F.3d at 480 (citing *Minnesota Dep't of Jobs and Training v. MSPB*, 875 F.2d 179, 182 (8th Cir. 1989) (*en banc*) (citing *Oklahoma v. United States Civil Serv. Comm'n*, 330 U.S. 127, 145-46 (1947) and 5 U.S.C. § 1508(2))).

Partisan candidacy by a covered employee is a "per se violation" of the Act. *See Alexander*, 165 F.3d at 480 (citing *Williams v. MSPB*, 55 F.3d 917, 922 (4th Cir. 1995)). Once it is shown that a covered state or local employee violated the Act, the only alternatives are removal or no penalty. *Alexander*, 165 F.3d at 480 (citing *Minnesota*, 875 F.2d at 182). *See also Williams*, 55 F.3d at 922 ("The Board has discretion to determine whether removal, or no penalty at all, is warranted.") The question of whether removal is warranted is a matter of administrative discretion. *Alexander*, 165 Fd at 480 (citing *Oklahoma*, 330 U.S. at 146; *Jarvis v. United States Civil Serv. Comm'n*, 382 F.2d 339, 342-43 (6th Cir. 1967); 5 U.S.C. § 1508.). *See also*, *Alexander*, 165 F.3d at 483.

Whether removal is appropriate depends upon the seriousness of the violation, taking into account all relevant mitigating and aggravating factors. *Alexander*, 165 F.3d at 483 (citing *Williams*, 55 F.3d at 922). Those factors include the following; (1) the nature of the offense and the extent of the employee's participation; (2) the employee's motive and intent; (3) whether the employee received the advice of counsel regarding the activities at issue; (4) whether the employee ceased the activities at issue; (5) the employee's past employment record; and (6) the political coloring of the employee's activities. *Alexander*, 165 F.3d at 483.

If the MSPB determines removal is the appropriate result, a reviewing court is "required to defer to that conclusion as being within the discretion of the Board." *Alexander*, 165 F.3d at 480 (citing *Minnesota*, 875 F.2d at 182).  The reviewing court must determine from a review of the administrative record whether a reasonable basis exists for the MSPB's conclusion. *Alexander*, 165 F.3d at 483 (citing *Minnesota*, 875 F.2d at 182).  "Only if the Board's conclusion had no reasonable basis would it constitute an abuse of discretion." *Id.* at 480.  In other words, there was no abuse of discretion if a reasonable basis for the conclusion exists.  *See id.*, at 480 (citing *Minnesota*, 875 F.2d at 182).

**B.  Application to Molina-Crespo's Arguments**

### 1.  Violation of the Hatch Act

As an initial matter, the Court notes Molina-Crespo's allusion to an argument that a statutory exception applies to him because he had no direct control or authority over federal funds.[5]  (ECF No. 15-2:2.)  Neither party, however, addresses the question of whether he was a "covered employee" other than this fleeting reference, and the Court accepts, without further analysis, that Molina-Crespo was a covered employee under the Act.

The Court finds Molina-Crespo's arguments insufficient to reverse the MSPB's conclusion that he violated the Act.  The undisputed facts show that Molina-Crespo was (1) an employee covered by the Act, and (2) a candidate for (partisan) elective office.  Therefore, under *Alexander*, Molina-Crespo's candidacy was a per se violation of the Act.

---

[5] Section 1501(4)(A) excepts from the reach of the Act "an individual who exercises no functions in connection with that activity [financed in whole or in part by the federal government]."

Because the MSPB had no discretion in concluding that Molina-Crespo violated the Act, a decision in accordance with Sixth Circuit case law, this portion of the ruling is **AFFIRMED**.

**2.  Removal as Consequence of Hatch Act Violation**

The Court next reviews the MSPB's conclusion that the violation warranted Molina-Crespo's removal.  As explained previously, once the MSPB found Molina-Crespo violated the Act, the MSPB had only two choices; removal or no penalty.  The Court is required to defer to the MSPB's conclusion that removal was warranted "as long as there was a reasonable basis" for that conclusion.  Here, the Court, considering the factors enumerated by the *Alexander* court, finds that there was more than a reasonable basis for the MSPB's conclusion that removal was appropriate.

Considering factors (1) and (2), Molina-Crespo's candidacy in a partisan political election is a "substantial and conspicuous violation of the Hatch Act."  *See Alexander*, 165 F.3d at 483.  Additionally, as to factor (6), Molina-Crespo's candidacy in a partisan primary had "clear political coloring."  *See*, *id.*  Regarding factor (3), the evidence shows (and the parties do not dispute) that Molina-Crespo was advised of the applicable Hatch Act problems near the outset of his primary candidacy.  Molina-Crespo received oral and written warnings from counsel at the OSC that he was subject to the Act, and that his actions put him in violation thereof.  Molina-Crespo offered no argument that he received advice of counsel to the contrary.  As to factor (4), Molina-Crespo maintained his candidacy through the partisan primary election rather than come into compliance with the Act; he failed to heed OSC's repeated warnings and neither resigned his position nor withdrew from the election.  Only his defeat in the March 2,

-9-

2004 primary ended Molina-Crespo's candidacy. Finally, there is no evidence in the record as to factor (5) to bolster or rebut Molina-Crespo's arguments here.

Furthermore, § 1502(a)(3) unambiguously prohibits covered employees from being "a candidate for elective office." The possible penalties for violating the Act are similarly clear. The MSPB's conclusions in this case are in accordance with the law.

Therefore, in Part 1 the Court finds that, under the *Alexander* six-factor framework, the MSPB did not abuse its discretion in concluding that (1) Molina-Crespo violated the Act, and (2) his violation warranted his removal as Director of LCCFFC. The Court also finds that the MSPB's conclusions are in accordance with the law. Accordingly, the MSPB's decision is **AFFIRMED**.

**PART 2**

The Court now turns to Molina-Crespo's constitutional arguments.[6] Molina-Crespo argues that § 1502(a)(3), and its implementing regulations found in 5 C.F.R. § 151.121(c) are unconstitutional as applied to this case.

**A. Applicable Legal Standards**

**1. Summary Judgment Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences drawn therefrom must be

---

[6]The ALJ explicitly refused to consider Molina-Crespo's claims that the Hatch Act is unconstitutional as applied to his case, as did the MSPB panel. Therefore, the constitutional arguments and evidence supporting the argument are properly considered "new evidence" such that the Court acts as a trial court deciding cross-motions for summary judgment in this Part 2.

viewed in a light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 403 (6th Cir. 1997).  If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving that no genuine issue of fact exists and that the moving party is entitled to judgment as a matter of law.  *See Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)).  To meet this burden, the party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the nonmoving party's failure to produce any evidence which would create a genuine dispute for the jury.  *See Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d at 1477).  Entry of summary judgment in favor of the defendant is appropriate if the plaintiff fails to show evidence sufficient to establish an essential element of the plaintiff's case on which he or she will bear the burden of proof at trial.  *See Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the defendant satisfies its burden, then the burden of going forward shifts to the plaintiff to produce evidence that results in a conflict of material fact to be resolved by a jury.  *See Cox*, 53 F.3d at 148.  A scintilla of evidence in support of the plaintiff's position is not enough.  *See Employers Ins. of Wausau v. Petroleum Specialities, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  There must be evidence from which a reasonable jury

-11-

could find for the plaintiff.  *Id.*  If the evidence is insufficient to reasonably support a verdict in favor of the plaintiff, the defendant's motion for summary judgment must be granted.  *Cox*, 53 F.3d at 150.

### 2.  Molina-Crespo's Constitutional Claims:

Molina-Crespo challenges the constitutionality of the Act based on three separate arguments.  First, he alleges the Act "violates his fundamental right to participate in the political process secured by the First Amendment."  (ECF No. 20:7.)  Second, he argues the Act "deprives him of protected liberty and property interests without due process of law."[7]  (Id.) Third, Molina-Crespo alleges equal protection violations based on a) an irrational classification between those already holding office and first-time office seekers, and b) a disproportionate wealth-based classification of people that forces those in Molina-Crespo's position to choose between exercising political rights and keeping government employment.  (Id.)

### a.  First Amendment Claims

Molina-Crespo argues that the Act violates First Amendment rights to "free speech and political association," (ECF No. 15-2:4), as they affect a right to hold partisan elective office (see ECF No. 20:3).  MSPB counters that § 1502(a)(3) does not violate the First Amendment because Molina-Crespo, as a government employee, enjoyed only a diminished level of speech protection.  (ECF No. 19:6-9.)  MSPB also argues that "the Supreme Court has

---

[7]Molina-Crespo argues at different points that his due process claims are pursuant to the Fifth and Fourteenth Amendments.  Although the analysis is the same under the Fifth and Fourteenth Amendments, see *Buckley v. Valeo*, 424 U.S. 1, 93 (1976), the Court will review the due process claims under the Fifth Amendment because this case involves state action by the federal government in the form of the Office of Special Counsel (a federal office) enforcing the Hatch Act (a federal statute).

never recognized a fundamental right to express one's political views by becoming a candidate for office."  (ECF No. 19:10 (citing *Alexander*, 165 F.3d at 484).)

        The federal Hatch Act has been around for more than 60 years.[8]  Its application to federal employees is well-settled law.  *See*, *e.g.*, *Briggs v. MSPB*, 331 F.3d 1307, 1315 (Fed. Cir. 2003) ("Congress has the power to prevent federal employees from running for elected office," citing *United Public Workers of America v. Mitchell*, 330 U.S. 75, 101 (1947), and *United States Civil Ser. Comm'n v. National Assoc'n of Letter Carriers*, 413 U.S. 548, 564-67 (1973)).  The restrictions imposed by the Act and MSPB regulations, however, have loosened over time as the Act was amended.  *See*, Scott J. Bloch, *The Judgment of History: Faction, Political Machines, and the Hatch Act*, 7 U. Pa.. J. Lab. & Emp. L. 225, 231-36 (Winter, 2005) (providing a short history of the Act and subsequent changes thereto).  When I started as a Department of Justice attorney in 1976, my political activities were limited to voting and possibly wearing a campaign button.  Over the next twenty years, the ability of federal employees to participate in the political process grew to encompass most activities short of running for office in a partisan election.  For example, one of my colleagues in the U.S. Attorney's Office successfully ran for election to his city's school board.

        Regardless of the current applicable restrictions, the courts have historically found that the government's (federal or state) interests as an employer[9] are rationally related to

---

    [8] The Act was first enacted in 1939, when it affected only federal employees, and it was extended to reach state and local employees in 1940.  *See, e.g.*, *Briggs v. MSPB*, 331 F.3d 1307, 1309-10 (Fed. Cir. 2003).

    [9] The cases primarily involve the Act as applied in the employer-employee relationship context, i.e. a federal employee subject to the federal Act, or a state employee subject to an analogous state statute.

the restrictions the Act imposes on the political activities of most government employees.  *See, e.g.*, *Mitchell*, 330 U.S. at 101; *Letter Carriers*, 413 U.S. at 564-67; *Broadrick v. Oklahoma*, 413 U.S. 601, 616-17 (1973).

In *Mitchell*, the Supreme Court cited three primary Congressional interests underpinning the Act: (1) the elimination of political factors as a possible basis for preferential treatment of employees by their supervisors; (2) the prevention of political leaders using government employees to build 'political machines'; and (3) prevention of 'the cumulative effect on morale of political activity by all employees who could be induced to participate actively.'" *Briggs*, 331 F.3d at 1314 (citing *Mitchell*, 330 U.S. at 101).

In *Letter Carriers*, the Court reaffirmed the *Mitchell* holding, and "noted that the partisan political activities of <u>federal</u> employees are limited in order that government operate effectively and fairly, without political influence or the appearance of political influence, and that federal employment be based on merit rather than political performance."  *Alexander*, 165 F.3d at 485 (citing *Letter Carriers*, 413 U.S. at 564-67) (emphasis added).

While *Mitchell* and *Letter Carriers* dealt with federal employees, the Court in *Broadrick* applied the *Mitchell/Letter Carriers* reasoning and analysis to a state statute limiting state employees' activities with proscriptions analogous to those in the federal Act.

The Congressional interests in regulating state employees through the Act, however, are different, because Congress is regulating pursuant to its Spending Power, not as an employer.  *See, e.g. Oklahoma v. Civil Serv. Comm'n*, 330 U.S. at 142-43 ("The end sought by Congress through the Hatch Act is better public service by requiring those who administer funds for national needs to abstain from active political partisanship."); *Alexander*, 165 F.3d at 485

-14-

(citing *Oklahoma*, 330 U.S. at 142-43) (when "regulating the political activities of state employees . . . the <u>federal</u> government does not have the same interest in promoting efficiency or public confidence in <u>state</u> government as a whole, but rather, has an interest in removing partisan political influence from the administration of federal funds") (emphasis added); *Williams*, 55 F.3d at 920.

The Court found no binding case law directly on point for Molina-Crespo's precise factual circumstances and constitutional arguments.  Nonetheless, the limited case law addressing similar circumstances and arguments supports the conclusion that the Act is a reasonable and acceptable restriction on First Amendment rights.  State employees are free to engage in the full panoply of political activities and expression available to all private citizens, with the singular exception of running for office in a partisan election.[10]  Running for office in a partisan election requires holding oneself out as a Democrat or Republican, and raising money and advertising under a party banner.  When applying the Act to state and local government employees, the federal government has a legitimate interest in making sure that state programs funded in whole or in part with federal dollars be administered in a non-partisan manner.  Similarly, the federal government also has a legitimate interest in ensuring that the public not perceive that those employees involved in administering the programs are partisan politicians exerting inappropriate partisan influence.  Congress could have rationally concluded that mixing the partisanship of election campaigns with control over or access to federal money was a

_____

[10] While the statutory text of § 1502(a)(3) does not, by its terms, limit the proscription to being a candidate for <u>partisan</u> elective office, § 1503 operates to so limit the reach of § 1502(a)(3).

-15-

problem to be avoided.  Seen in this light, the provision of the Act which Molina-Crespo challenges passes Constitutional muster under the rational basis test.

There is an argument that strict scrutiny should be applied in this case; as Molina-Crespo argues, this is the <u>federal</u> government dictating to <u>state</u> employees, as opposed to the factual situations involved in *Mitchell*, *Letter Carriers*, and *Broadrick*.  As such, a strong case can be made that the normal "employer-employee" relationship generally analyzed in Hatch Act cases does not apply, and, therefore, neither would the lowered level of constitutional protections.[11]  Indeed, as the Supreme Court stated in *Broadrick*, the Act and analogous state statutes are "directed, by [their] terms, at political expression which if engaged in by private persons would plainly be protected by the First and Fourteenth Amendments."  *Broadrick*, 413 U.S. at 616.  Additionally, the Supreme Court concluded its *Mitchell* and *Letter Carriers* opinions indicated that legislative restraints such as those in the Act "encroach on First Amendment rights" even when those restraints are eventually found constitutional.  *City of Buffalo v. United States Dept. of Labor*, 729 F.2d 64, 67 (2nd Cir. 1984) (citing *Elrod v. Burns*, 427 U.S. 347, 366, 370-71 (1976)).

This Court found no binding case law in which a court, addressing First, Fifth, or Fourteenth Amendment challenges to the Act, analyzed the question therefore implicated; whether the <u>federal</u> Act applied to a <u>state</u> employee takes the analysis outside the realm of government employer-employee speech, and accordingly elevates the level of speech protections

---

[11]*See, e.g.*, *Mitchell*, 330 U.S. at 101 ("For regulation of <u>employees</u> it is not necessary that the act regulated be anything more than an act reasonably deemed by Congress to interfere with the efficiency of the public service.") (emphasis added); *Letter Carriers*, 413 U.S. at 564 (citing *Pickering*, 391 U.S. at 568) (explaining that the federal government "has an interest in regulating the conduct and 'speech of <u>its employees</u> that differ[s] significantly from those it possesses in connection with the regulation of the speech of the citizenry in general.'").

-16-

(and, of course, the level of scrutiny).[12]  Instead, the courts in cases involving state employees subject to the Act have, in general, relied on the Supreme Court's *Mitchell*, *Oklahoma*, *Letter Carriers*, and *Broadrick* opinions to summarily reject the state employee's First Amendment arguments, without further analysis.  *See, e.g.*, *Williams*, 55 F.3d 917, 921 n.7 (4th Cir. 1995); *Williams v. MSPB*, 15 F.3d 46, 49 (4th Cir. 1994); *Smith v. U.S. Civil Ser. Comm'n*, 520 F.2d 731, 735 (7th Cir. 1975); *Northern Virginia Regional Park Authority v. U.S. Civil Serv. Comm'n*, 437 F.2d 1346, 1350-51 (4th Cir. 1971); *Connecticut v. MSPB*, 718 F. Supp. 125, 131 (D. Conn. 1989); *Fishkin v. U.S. Civil Serv. Comm'n*, 309 F. Supp. 40, 45-46 (N.D. Cal. 1969); *Dingess v. Hampton*, 305 F. Supp. 169, 172, n.4 (D.C. Dist. 1969).

Assuming, therefore, that the Supreme Court's language in *Broadrick* is instructive, Molina-Crespo's First Amendment rights of free speech, free association, and political participation are implicated.  It may even be that the ban on being a candidate for partisan elective office infringes Molina-Crespo's right to identify himself with a particular political party, rather than infringing on any right to simply be a candidate.

The Supreme Court has never formally recognized a fundamental right to be a candidate for elective office.  *See, Bullock v. Carter*, 405 U.S. 134, 142-43 (1972) ("The court has not heretofore attached fundamental status to candidacy as to invoke a rigorous standard of review.") *See also, Clements v. Fashing*, 457 U.S. 957, 963 (1982) ("Far from recognizing candidacy as a 'fundamental right,' we have held that the existence of barriers to a candidate's

---

[12] In *Oklahoma*, the fourth major Supreme Court opinion construing the Hatch Act, the Court considered a case involving the Act applied to remove a covered state employee.  The Court analyzed a Tenth Amendment challenge brought by the state, however, not a First, Fifth, or Fourteenth Amendment challenge by the individual employee.  Thus, the Court in applying its Tenth Amendment analysis did not address the implications of the federal Act as applied to a state employee vis a vis the appropriate level of protection for the individual's First Amendment rights.

-17-

access to the ballot 'does not <u>of itself</u> compel close scrutiny.'" (quoting *Bullock*) (emphasis added). Moreover, the Sixth Circuit has held that there is no fundamental right to be a candidate for elective office. *See, Carver v. Dennis*, 104 F.3d 847, 850-53 (6th Cir. 1997). *Carver*, however, dealt with a non-partisan election in which "political affiliation was irrelevant," and the only two candidates were an employee, the challenger, and her boss, the incumbent. *Carver*, 104 F.3d at 852. Therefore, *Carver* did not address whether there is a fundamental right to affiliate oneself with a political party to be a partisan candidate for elective office, the question arguably presented here.

Nonetheless, the Court finds that under strict scrutiny review, the prohibition against running for partisan elected office is narrowly tailored to the perceived harm. Covered state and local employees remain free to engage in a wide range of political activities. Indeed, when Congress amended the Act in 1974 to loosen the constraints on political activity for state or local employees, only three narrowly focused restraints remained, one of which is the § 1502(a)(3) ban on being a candidate for elective office. *See, e.g.*, *Bauers v. Cornett*, 865 F.2d 1517 (8th Cir. 1989) (citing Pub. L. 93-443, Federal Election Campaign Act Amendments of 1974). Therefore, the restriction in § 1502(a)(3), of which Molina-Crespo had full knowledge before he chose to run for elective office, is narrowly tailored, and thus does not unduly burden the First Amendment rights of state and local employees.

**b. Molina-Crespo's Equal Protection Claims**

**1. The Irrational Classification in § 1502(c)**

Next, Molina-Crespo argues § 1502(a)(3) violates his constitutional rights to equal protection. He contends that the Act creates an irrational classification between those

-18-

already holding office and first-time office seekers.  The Court finds Molina-Crespo's arguments unavailing.

If a classification in a statute involves neither a suspect nor quasi-suspect classification, nor infringes on a fundamental constitutional right, it must be upheld under an equal protection challenge "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993).  It is well-settled law that rational basis review requires only that the classification must be rationally related to a legitimate governmental purpose.

Molina-Crespo contends that § 1502(c)[13] unconstitutionally classifies state and local employees running for elective office.  According to his argument, § 1502(c) differentiates between persons who are first-time elective office seekers, and persons who are elective office incumbents and who are exempt from § 1502(a)(3), and unconstitutionally discriminates against the former class.  Molina-Crespo misconstrues the proper classification, however.  Instead, the Act creates a classification of those individuals holding <u>elective</u> office in a position <u>exempted</u> pursuant to § 1502(c)(4) who seek reelection to that position, as compared to an individual holding <u>appointive</u> office in a <u>covered</u> position, who is simultaneously running for election or reelection for a different (elective) office.  *See Northern Virginia Regional Park Authority*, 437 F.2d at 1351; *In re Higgenbotham*, 340 F.2d 165, 167 (3rd Cir. 1965).  This differentiation is not

---

[13] Section 1502(c) exempts from § 1502(a)(3)'s prohibitions certain state or local government jobs, the incumbents in which are elected, rather than appointed, e.g., Governor or Lieutenant Governor of a state, or a mayor of a city.  The official duties of these offices involve, in part, administering federally assisted projects or programs.  Section 1502(c)(4) exempts "an individual holding elective office."

-19-

a suspect or quasi-suspect classification.  Assuming that this classification similarly does not infringe on a fundamental right, as explained in the First Amendment analysis, *supra*, rational basis review applies.

The Court finds that Congress could have reasonably believed that exempting governors, mayors, and other similarly-situated executive-level elected officials from the reach of § 1502(a)(3) was rational, even though the official duties of these types of elected positions involve, in part, the administration of federal funds.  For example, it would be irrational to require Governor Strickland to resign his office before he could legally run for re-election in 2010 simply because he falls within the definition of a covered state employee under the Act and is thus subject to § 1502(a)(3)'s prohibition.  The Court finds, therefore, that a rational connection exists between the classifications created by § 1502(c)(4) and Congress's legitimate interests in preventing partisan influence in administering federal funds.  Accordingly, Molina-Crespo's first equal protection challenge fails to overcome rational basis review.  Moreover, even if a fundamental right is implicated by the classifications in question, that infringement survives strict scrutiny review, as explained *supra*.

## 2.  The Wealth-Based Classification

Molina-Crespo also argues that the Act creates a wealth-based classification that infringes on a fundamental right.  Under this line of argument, the Act classifies and discriminates based on wealth because it forces individuals who are government employees – and therefore of modest means and dependent on their government jobs for income – to choose between keeping their jobs and running for office.

Under the Supreme Court's equal protection jurisprudence, however, wealth is generally not a suspect classification. *See, e.g.*, *Maher v. Roe*, 432 U.S. 464, 471 (1977) (stating that the Court "has never held that financial need alone identifies a suspect class for purposes of equal protection analysis."). *But see*, *Turner v. Fouche*, 396 U.S. 346, 362 (1970) (striking down a property ownership requirement for school board membership, because the the requirement was violative of the "constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications"); *Quinn v. Millsap*, 491 U.S. 95, 109 (1989) (citing *Turner*, at 364, and holding that the government cannot require property ownership as a prerequisite to running for and holding public office).

Additionally, Molina-Crespo alleges that the wealth-based classification is the result of disparate impact. Under the Supreme Court's disparate impact jurisprudence, however, an individual claiming discrimination based on disparate impact must also show evidence of a discriminatory animus by Congress when it passed the statute. *See Washington v. Davis*, 426 U.S. 229, 242 (1976); *Mobile v. Bolden*, 446 U.S. 55, 67 (1980) (holding that an election system that had the impact of disadvantaging minorities was not to be subjected to strict scrutiny unless there was proof of a discriminatory purpose). Molina-Crespo shows no evidence of such discriminatory intent in the Act.

More importantly, Molina-Crespo's argument rests upon a faulty supposition. Simply because an individual may be a covered state or local employee does not automatically mean that employee is of modest means. Similarly, just because one is <u>not</u> employed in such a job does not automatically mean one is independently wealthy and able to run for elective office without a primary job. The restriction contained in § 1502(a)(3) simply classifies and then

-21-

prohibits a narrow class of individuals from working in an appointed government job with a connection to federal funds, while simultaneously running for a partisan elected office.  This restriction does not constitute a wealth-based restriction, and even if it did, the classification is rationally related to Congress's legitimate interests regarding federal funds administration.  Therefore, the Court finds that rational basis review is not fatal for this classification.[14]

### c.  Molina-Crespo's Due Process Claims

Molina-Crespo alleges that his fundamental rights of free speech, free association, and political participation, and his liberty interest in his government employment have been deprived without due process of law.  Regardless of whether his fundamental rights and liberty interests are implicated, however, the facts reveal that Molina-Crespo had ample due process protections; he had notice of the charges, an explanation of the evidence, and an opportunity to be heard, as required by the Supreme Court's *Loudermill* standard.  *See*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546-47 (1985).

As the time line of this case shows, Molina-Crespo filed to run as a candidate for partisan elective office in December of 2003, but he did not leave his position until December of 2005.  In the intervening two year period, Molina-Crespo had numerous instances of procedural due process protections.  Critically, shortly after he filed the paperwork to run, Molina-Crespo received at least two different warnings from OSC that his candidacy violated the Act.  These warnings included both oral and written communications.  In these warnings, OSC made it clear that Molina-Crespo could keep his job as Direction of LCCFFC if he withdrew his candidacy, or

---

[14] Because the Act does not create a wealth-based classification, the Court does not address Molina-Crespo's argument that a wealth-based classification that infringes on a fundamental right is subject to strict scrutiny.

that he could continue as a candidate if he resigned from his job.  Molina-Crespo did neither.

Furthermore, after he unsuccessfully competed in the primary election while still employed with

LCCFCC, Molina-Crespo received a hearing before the ALJ, to determine whether he violated

the Act, and if so what the appropriate consequences might be.  Additionally, after an

unfavorable result from the ALJ hearing, Molina-Crespo petitioned the full MSPB for a review

of the ALJ's decision.

In light of the foregoing undisputed facts, the Court finds that Molina-Crespo had

ample and sufficient due process protections such that his Fifth Amendment due process rights

were not violated.

## IV.  CONCLUSION

The Court finds that § 1502(a)(3) of the Hatch Act is constitutional.  Accordingly,

in Part 1, Plaintiff Molina-Crespo's Petition **(ECF No. 1)** is **DENIED**.  In Part 2, Plaintiff

Molina-Crespo's Motion for Summary Judgment **(ECF No. 15)** is **DENIED**, and Defendant

MSPB's Motion for Summary Judgment **(ECF No. 18)** is **GRANTED**.

Consequently, Plaintiff Molina-Crespo's Petition is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster   February 16, 2007*
**Dan Aaron Polster**
**United States District Judge**